E-FILED
Wednesday, 30 March, 2016  10:20:43 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF COUNTRY STONE HOLDINGS, INC., et al, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:15-cv-04063-SLD |
| v. | ) ) | |
| FIRST MIDWEST BANK and RONALD BJUSTROM, | ) ) ) | |
| Defendants. | ) ) | |

ORDER

Before the Court is the motion of Plaintiff Official Committee of Unsecured Creditors of Country Stone Holdings, Inc., et al. ("the Committee") to withdraw the reference of this case from the Bankruptcy Court, ("Mot. Withdraw") ECF No. 1.  For the following reasons, the motion is DENIED.

**BACKGROUND[1]**

On October 23, 2014, several debtor LLCs and corporations ("the debtors"), all of them allegedly directly or indirectly controlled by Defendant Ronald Bjustrom, filed a petition for relief under title 11 of the Bankruptcy Code.  ¶¶ 8, 1.  On November 4, 2014, the Office of the United States Trustee appointed the Committee to represent the interests of various unsecured creditors.  ¶ 2.  On November 26, 2014, the Bankruptcy Court entered a final order authorizing

---

[1] The facts related herein are taken from the Committee's motion to withdraw the reference, and from Defendant's Memorandum in Opposition to same, ECF No. 4.  When citing to the motion to withdraw the reference, citations are made using the pilcrow ("¶") without further attribution.

the debtors to (1) obtain post-bankruptcy petition financing pursuant to Section 364 of the Bankruptcy Code, (2) provide adequate protection, (3) grant liens, security interests, and superpriority claims to the post-petition lender, (4) use cash collateral, (5) enter into debtor-in-possession loan and security agreements, and (6) granting other related relief.  ¶ 3; Bankruptcy Order, Mot. Withdraw Ex. A.  This order permitted the debtors to get financing during their chapter 11 case from their senior lender, Defendant First Midwest Bank ("Midwest").  ¶ 3.  The Order also granted the Committee standing to bring challenges against Midwest, and to bring various claims to recover or protect assets for the benefit of the debtors' estates.  ¶ 4.

On December 30, 2014, the Bankruptcy Court authorized the sale of most of the debtors' assets, free of many liabilities, amongst which, relevantly, were the claims the debtors might have against Bjustrom for breaches of his fiduciary duties to the debtors.  ¶ 5  On April 21, 2015, the debtors and Committee filed an emergency motion to grant standing to the Committee to bring claims for the benefit of the debtors' bankruptcy estates.  ¶ 6.  On May 18, 2015, the Bankruptcy Court stated that it would grant the motion, and subsequently did.  ¶ 6.  On May 19, 2015, the Committee filed a 13-count Complaint.  ¶ 7, Mot. Withdraw Ex. B.

The Complaint describes a course of dealing between Bjustrom and Midwest by which, allegedly, Bjustrom first borrowed about $40 million from Midwest, then colluded with Midwest to borrow more money from the entities the Committee represents, used that money to pay back some of the debt to Midwest, cancelled Bjustrom's personal guaranty of Midwest's loans and cash him out to the tune of $230,000, and finally entered bankruptcy in such a way as to preserve debt obligations to Midwest and extinguish them as to the Committee entities.  The complaint:  (I-IV) seeks a declaration that various assets held by the debtors are not subject to Midwest's pre- and post-petition liens; (V) seeks a declaration that perfection of security

interests by Midwest within 90 days of the bankruptcy filing was a preference; (VI-VII) seeks a declaration that Midwest was a non-statutory insider and thus certain interests should also be deemed preferences; (VIII-IX) seeks a declaration that the grant to Midwest of a security interest in a claim against the debtors' accountant was a fraudulent conveyance; (X, XII) alleges that Bjustrom breached fiduciary duties to the debtors; and (XI, XIII) alleges that Midwest aided and abetted these breaches. Resp. Mot. Withdraw 2.

On June 12, 2015, the Committee filed before this Court its motion to withdraw the reference of the Complaint to the bankruptcy court.

## DISCUSSION

### I. Legal Standard on a Motion to Withdraw the Reference

Federal district courts have original and exclusive jurisdiction of all "cases under title 11" of the United States Code. 28 U.S.C. § 1334. However, district courts can, and normally do, refer bankruptcy cases to specialized bankruptcy courts. 28 U.S.C. § 157(a). This is the practice in the Central District of Illinois. L. R. 4.1.

However, a district court may withdraw the reference of the matter to a bankruptcy court "for cause shown." 28 U.S.C. § 157(d). Congress has not expressly defined "cause shown" in this setting, but courts have traditionally considered: "(i) whether the proceeding is core or non-core, (ii) considerations of judicial economy and convenience, (iii) promoting the uniformity and efficiency of bankruptcy administration, (iv) forum shopping and confusion, (v) conservation of debtor and creditor resources, and (vi) whether the parties requested a jury trial." *In re Emerald Casino, Inc.*, 467 B.R. 128, 135 (Bankr. N.D. Ill. 2012).

District courts may need from time to time to withdraw references, because there are certain types of claim a bankruptcy court may not enter final judgment on. Bankruptcy judges

may enter final judgments on all proccedings under title 11; that is, in the bankruptcy cases of debtors.  28 U.S.C. § 157(a).   Bankruptcy judges may also do so in a related class of proceedings, "core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. § 157(b)(1).  Core proceedings include those which invoke substantive rights provided by title 11 or by their nature could arise only in a bankruptcy case.  *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990); *see* 28 U.S.C. § 157(b)(2) (containing a nonexclusive list of core proceedings).   But when a bankruptcy court determines that a referred proceeding is non-core, it may only submit proposed findings of fact and conclusions of law to the district court, 28 U.S.C. § 157(c)(1), unless all parties consent to the bankruptcy court's entry of judgment on those claims as well, *id.* § 157(b)(1).  Additionally, a bankruptcy court is not authorized to conduct a jury trial, *Matter of Grabill Corp.*, 967 F.2d 1152, 1158 (7th Cir.1992), unless both parties consent, *see* L. R. 4.2(A).

There also exists a narrow category of claims, called "*Stern*" claims after *Stern v. Marshall*, 131 S. Ct. 2594 (2011), that section 157 authorizes bankruptcy courts to hear, but that the Constitution prevents them from ruling on.  These claims are (at least) state law counterclaims by debtors designated "core" by the statute but which do not stem "flow from" the federal statutory scheme and would not necessarily be resolved by the process of ruling on the proof claim in the main bankruptcy proceedings.  *Stern*, 131 S.Ct. at 2611.  However, these claims, like non-core claims, may be heard by the bankruptcy court even though it cannot rule on them.  Like non-core claims, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court to be ruled upon.  *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014).

"Withdrawal is traditionally the exception, rather than the rule . . . ." *Emerald Casino*, 467 B.R. at 135. The movant seeking withdrawal bears the burden of showing that removal is appropriate. *In re HA 2003, Inc.*, No. 03 C 9008, 2004 WL 609799, at *2 (N.D. Ill. Mar. 24, 2004).

**II.   Analysis**

The Committee argues that the reference to the bankruptcy court should be withdrawn because, (i) the Committee is entitled to a jury trial on some of its claims, (ii) the Complaint includes both non-core claims and ("arguably," Mot. Withdraw ¶ 21) *Stern* claims, (iii) withdrawing the reference would promote judicial efficiency, (iv) not withdrawing the reference would cause delay if aspects of the case were re-litigated before this Court.

The Court need not analyze the Committee's claims to determine which are core, non-core, or *Stern* claims. The fact that *some* claims would have to be tried to a jury, or submitted to this Court in a bankruptcy judge's report and recommendation, does not in itself militate in favor of withdrawing the reference. This litigation is at the very earliest phases; if it appears that a jury trial will indeed occur, the parties may move again to withdraw the reference on that basis. *See In re Neumann Homes, Inc.*, 414 B.R. 383, 387 (N.D. Ill. 2009) ("At this [early] stage in the litigation, the Neumanns' contention that it is entitled to a jury trial is insufficient to support withdrawal of the reference.").

And even if, as the Committee contends, four of its claims, for breach of fiduciary duty and aiding and abetting, are non-core claims, and two are "arguably" *Stern* claims, the Committee makes no argument as to what loss of judicial economy there is in permitting the bankruptcy court to submit a report of recommended findings of fact and conclusions of law to this Court. On the contrary, judicial economy will be served by allowing the claims to be

considered by the bankruptcy court first.  The bankruptcy court has great expertise in dealing with claims that are, like these, deeply entangled in the underlying bankruptcy proceedings.  *See id* at 387–88.  The bankruptcy court also has much greater familiarity with the facts of this case, having had the underlying bankruptcy proceedings before it since their inception in October 2014.

The factors courts traditionally consider in cases like this mostly weigh in favor of not withdrawing the reference to the bankruptcy court.  *See In re Emerald Casino*, 467 B.R. at 135.  Many, if not most, of the claims in the complaint are non-core.  Judicial economy, uniformity and efficiency of bankruptcy proceedings, and conservation of resources all weigh in favor of keeping the case with the bankruptcy court.  While there has been no suggestion of forum shopping that the Court can discern, keeping the case before the bankruptcy court ensures that none will occur, at least as between district and bankruptcy court.  Only the Committee's jury demand points in the opposite direction, and, as explained above, this is hardly dispositive.  "Of the courts that have considered the issue of an early withdrawal of a reference to bankruptcy court, the overwhelming majority have declined, post-*Stern*, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with relevant law and the facts of the cases before them."  *Mason v. Klarchek*, No. 12-CV-9971, 2013 WL 1869098, at *2 (N.D. Ill. May 2, 2013).  This Court also declines to do so.

## CONCLUSION

Accordingly, the Committee's Motion to Withdraw the Reference, ECF No. 1, is DENIED, as is the Committee's Motion for Leave to file a reply, ECF No. 5.

Entered this 30th day of March, 2016.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
